IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HERMAN THOMAS PENNINGTON, JR.      \*
                                             \*
                 Plaintiff,                      \*
                                             \*
                    v.                             \*         Case No. SAG-10-cv-3055
                                             \*
MICHAEL J. ASTRUE,                  \*
Commissioner of Social Security,      \*
                                             \*
                 Defendant.                 \*

\*\*\*\*\*\*

**MEMORANDUM**

Pending before this Court, by the parties' consent, is a motion for summary judgment concerning the Commissioner's decision denying Herman Thomas Pennington, Jr.'s claim for a period of disability and Disability Insurance benefits ("DIB")[1]. [ECF No. 17]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal

---

[1] Mr. Pennington, who is *pro se*, has filed several motions including a "Motion for Dismissal of Order," [ECF No. 19] and a "Motion to Appear in Court for Case," [ECF No. 20]. Because Mr. Pennington is a *pro se* litigant, this court is construing his filings liberally. The Motion for Dismissal of Order actually appears to be requesting that the case proceed forward, and not that it be dismissed, so that motion will be DENIED. The Motion to Appear in Court for Case will also be DENIED. This Court's role is limited to a review of the ALJ's decision under a substantial evidence standard, and a hearing is not necessary to complete that review.

The Court also notes that in two separate filings, Mr. Pennington has submitted new evidence that was never submitted to the Commissioner. One filing [ECF No. 12] consists of medical records from 2010 and 2011, and the other filing consists of medical records from 2008 and 2009 [ECF No. 21]. The Court cannot consider evidence that was not before the Commissioner. *See Smith v. Chater*, 99 F.3d 635, 638, n.5 (4th Cir. 1996). A reviewing Court can remand a case to the Commissioner on the basis of new evidence, but only if the Claimant establishes that the evidence is new and material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991); 42 U.S.C. §405(g). Claimant has not presented any facts or argument regarding these factors, and the Court cannot consider this evidence. Claimant's Motion to Admit Medical Evidence From 2008 (ECF No. 21) will therefore be DENIED.

standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's motion[2], VACATES the Commissioner's denial of benefits, and REMANDS this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

Herman Thomas Pennington, Jr. ("Mr. Pennington" or "Claimant"), applied for DIB on October 9, 2008, alleging that he had been disabled since January 14, 2008 due to diabetes, high blood pressure, heart problems, protein leak of kidneys, pinched nerve in neck, pain in lower back, pain in legs and knots on feet, and surgery on wrist and elbow for carpal tunnel. (Tr. 127). His claims were denied initially and upon reconsideration. (Tr. 61-65, 69-70). A hearing was held before the Honorable Melvin Benitz, Administrative Law Judge ("ALJ"), on October 29, 2009, where Mr. Pennington appeared with counsel and testified. (Tr. 28-58). The ALJ subsequently denied Mr. Pennington's claims in a decision dated December 15, 2009. (Tr. 15-23). The ALJ found that although Claimant's diabetes, degenerative disc disease, and carpal tunnel syndrome were "severe" impairments as defined in the Regulations, they did not alone or combined meet or medically equal any of the listed impairments found in the Regulations. (Tr. 17-18). The ALJ determined that Claimant's hypertension, obesity, and renal deficiency were not severe impairments. (Tr. 17-18). The ALJ also determined that Claimant retained the

---

[2] On January 19, 2011, a scheduling order was entered. The Plaintiff's Motion for Summary Judgment was due March 30, 2011. Plaintiff submitted some medical records in the form of correspondence on that date. As of the date of this memorandum, Plaintiff has not filed a Motion for Summary Judgment, although Plaintiff has filed other motions, which are addressed in footnote 1 above. Regardless, the Court is required to review the ALJ's conclusions and determine whether they are legally correct. *See Meyers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

2

residual functional capacity to perform a limited range of sedentary work. (Tr. 18-20). The ALJ found that Claimant was not able to perform any of his past relevant work ("PRW"). (Tr. 21). After receiving testimony from a vocational expert ("VE") and considering his age, education, work experience, and residual functional capacity, the ALJ determined there were jobs that existed in the national and local economies in significant numbers which he could perform. (Tr. 22). Accordingly, the ALJ found Mr. Pennington was not disabled. (Tr. 23). On October 12, 2010, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 1-4).

## II. STANDARD OF REVIEW

The function of this Court is not to review Mr. Pennington's claim *de novo* or to reweigh the evidence of record. *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987); *see* 42 U.S.C. § 405(g) (2009).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1996). It is such relevant evidence as a reasonable mind might accept as adequate to support a verdict were the case before a jury. *Johnson v. Califano,* 434 F.Supp. 302, 307 (D.Md.1977). Usually, if substantial evidence supports the Commissioner's decision, the decision must be upheld. *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir.1986); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see* 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court also must determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman,* 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for a rehearing. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991); *Coffman,* 829 F.2d at 519; *Vietek v. Finch,* 438 F.2d 1157, 1158 (4th Cir.1971); *see* 42 U.S.C. § 405(g).

In determining whether a claimant is disabled within the meaning of DIB, the Commissioner has promulgated regulations that set forth the following five-step sequential evaluation procedure.

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq*. If so, the claimant is not disabled.
>
> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.
>
> (3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.
>
> (4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.
>
> (5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920 (2009); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

# III. ALJ'S DECISION

After reviewing the medical record and hearing testimony, the ALJ evaluated Mr. Pennington's claims using the Social Security Administration's five-step sequential process and made the following relevant findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: diabetes, degenerative disc disease, and carpal tunnel syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is limited to simple, routine, unskilled jobs with low concentration and memory; can lift no more than 10 pounds occasionally; must avoid heights and hazardous machinery; must avoid stairs, ladders, ropes, and scaffolds; is limited to occupations with little reading and writing due to educational background; and is limited to occupations which do not require repetitive fine dexterity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 31, 1963 and was 44 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2008 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-23).

## IV. SUMMARY OF EVIDENCE

At the time of his administrative hearing, Herman Pennington, Jr. was forty-six years old, was 5'9" tall, and weighed approximately 209 pounds. (Tr. 31, 47). Mr. Pennington has an 11th grade education and can read and write English "a little bit" and do some simple math. (Tr. 32). He alleged disability due to degenerative disc disease, neck pain, diabetes, protein leakage in his kidneys, pancreatitis, carpal tunnel syndrome, and gout. (Tr. 35-42). In addition, Mr. Pennington's medical records reflected that he suffered from sleep apnea, (Tr. 391-402), and he testified at the hearing that he slept only one or two hours per night (Tr. 45).

Mr. Pennington sought medical attention on an extremely frequent basis for his various complaints. Specifically, with respect to his degenerative disk disease, on May 21, 2008, Mr. Pennington saw Dr. David Sowa, an orthopaedist, complaining of pain radiating from the neck to his elbow. (Tr. 295, 310, 566). Dr. Sowa ordered a cervical spine X-ray and prescribed therapy. *Id.* On May 22, 2008, the X-ray showed mild degenerative changes. (Tr. 266).

On June 5, 2008, Mr. Pennington had a follow-up visit with Dr. Sowa. Mr. Pennington presented with complaints of numbness in his right upper extremity. Dr. Sowa noted some foraminal narrowing at C5-6 and C6-7, but no significant disc space narrowing. Dr. Sowa recommended therapy, but noted that Mr. Pennington cannot afford therapy. They discussed

6

surgery to help resolve the peripheral nerve compression in the right elbow and carpal tunnel. (Tr. 294).

On an August 25, 2008 visit to Dr. Sowa, Mr. Pennington complained of some neck pain, right trapezius muscle pain, and intermittent cervical radicular symptoms in his right upper extremity. Mr. Pennington again stated that he cannot afford to go to therapy. Dr. Sowa noted, "I will see him again in 4 weeks and hope that he can get back to work after that." (Tr. 293).

On September 17, 2008, an X-ray of the lumbar spine showed mild degenerative changes (Tr. 271). On October 1, 2008, an MRI of the cervical spine showed disc protrusion at C6-7, causing mild to moderate central canal stenosis and moderate left neuroforaminal stenosis (Tr. 274, 546). The MRI also showed scattered protrusions and hypertrophies causing mild canal and foraminal stenosis. *Id.*

On November 13, 2008, Mr. Pennington saw orthopaedist Dr. Ann Kim for management of the neck pain radiating into his shoulders. (Tr. 288-89). Mr. Pennington's range of motion was decreased, and he was tender to palpation. *Id.* Dr. Kim recommended a transforaminal injection and physical therapy. *Id.* She indicated that Mr. Pennington should not lift over ten pounds. (Tr. 296, 537). Dr. Kim performed a nerve root block on December 15, 2008. (Tr. 584).

On December 23, 2008, non-examining physician Dr. S. Rudin completed a physical residual functional capacity assessment. Dr. Rudin noted a primary diagnosis of diabetes, high blood pressure, and carpal tunnel syndrome, and a secondary diagnosis of degenerative joint disease right knee and cervical stenosis. Dr. Rudin considered test results including Mr. Pennington's May 2008 cervical spine X-ray, his September 2008 lumbar spine X-ray, and his October 2008 MRI of the cervical spine. In addition, Dr. Rudin expressly considered Dr. Kim's

notes from the November 13, 2008 evaluation. Dr. Rudin determined that the evidence is consistent with at least a sedentary RFC. (Tr. 383-90).

On January 6, 2009, Dr. Kim diagnosed Mr. Pennington with cervical spinal stenosis and permitted his return to work on modified duty, with no lifting over 10 pounds. At that appointment, Mr. Pennington reported that he had not been going to physical therapy because of transportation issues. He and Dr. Kim "discussed different options for therapy." (Tr. 423-24).

On January 14, 2009, Dr. Sowa authorized Mr. Pennington to return to full duty work as of January 14. (Tr. 421, 535).

On February 24, 2009, Mr. Pennington had a follow-up visit with Dr. Kim. Mr. Pennington told her he was unable to go to physical therapy because he had no transportation. Dr. Kim told him that most therapy locations offer transportation and he still declined. Dr. Kim prescribed an increased dose of Gabapentin and started Clonopin for sleeping issues. (Tr. 420, 526). Two days later, Dr. Kim completed a work status form indicating that Mr. Pennington could work on modified duty but could not lift more than ten pounds. (Tr. 534).

On March 11, 2009, medical consultant Dr. P.H. Moore did a Physical Residual Functional Capacity Assessment, for the purposes of the reconsideration of the denial of benefits. Dr. Moore determined that Mr. Pennington could frequently lift and or carry up to 10 pounds, could stand and or walk at least two hours in an 8 hour work day, could sit about 6 hours in an 8 hour work day, could engage in unlimited pushing and pulling, could occasionally engage in activities such as climbing, balancing, stooping, kneeling, crouching or crawling (although no climbing of ladders, rope, or scaffolds), and had no manipulative, visual, communicative, or environmental limitations. Dr. Moore noted that "medical evidence confirms lack of compliance

for physical therapy. Exam is stable, no new diabetic symptoms or treating source evidence." (Tr. 426-433).

On April 7, 2009, Dr. Kim completed another work status form allowing Mr. Pennington to work on modified duty without pushing, pulling, or lifting more than ten pounds for four weeks. (Tr. 533). Dr. Kim completed a similar form on June 30, 2009, (Tr. 532) and again on August 13, 2009, authorizing work on modified duty for a period of six weeks. (Tr. 531).

On October 7, 2009, Dr. Bruce Rudin evaluated Mr. Pennington for orthopaedic surgery. Dr. Rudin noted, "My suspicion is that based on the moderate nature of the pathology in his neck and there is no way to confirm, he would in fact be asymptomatic if this was treated surgically." (Tr. 530).

With respect to sleep apnea, Dr. Joshua Aaron at Regional Pulmonary & Sleep Medicine evaluated Mr. Pennington on December 13, 2008, following an overnight formal sleep study. Dr. Aaron diagnosed mild obstructive sleep apnea with in-laboratory effectiveness for CPAP therapy. (Tr. 400-402). A follow-up visit on January 19, 2009 indicated that use of the CPAP mask helped somewhat, but that Mr. Pennington was having difficulty tolerating the CPAP machine on a regular basis. (Tr. 398). Another sleep laboratory test was performed on February 9, 2009 at Union Hospital, and Mr. Pennington was diagnosed with obstructive sleep apnea syndrome and severe periodic limb movement disorder. (Tr. 391-392). However, the findings on the corresponding wakefulness test on February 10, 2009 supported a decision to clear Mr. Pennington for commercial driving licensure. (Tr. 394-95). A follow-up visit with Dr. Aaron on February 18, 2009 indicated that Mr. Pennington was using the CPAP machine for about 3.5 hours per night. (Tr. 396-97).

## V. ANALYSIS

The ALJ's analysis in this case was flawed at steps two and three. At step two of the five-step sequential analysis, the ALJ must consider the severity of an impairment both individually and in combination with a claimant's other impairments. See 20 C.F.R. § 416.920. See also 20 C.F.R. § 416.923 ("We will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"); *Cook*, 783 F.2d at 1174 (the Agency "must make a specific and well-articulated finding as to the effect of the combination of impairments") (citations omitted). The Fourth Circuit has held that an impairment is "severe" unless it "has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984).

At step two, the ALJ did not address Mr. Pennington's sleep apnea and periodic limb movement disorder, despite the medical records evidencing the diagnoses and Mr. Pennington's testimony at the hearing that his nightly sleep was extremely limited. (Tr. 391-402, 45). In addition, the ALJ did not address Mr. Pennington's gout and leg/foot issues, which, at least as of the date of the hearing, rendered him unable to walk and restricted him to a chair. (Tr. 41-42). In light of the evidence and diagnoses in the record, the ALJ at step two should have considered and determined whether or not those impairments were severe.

The failure to consider the sleep disorders and gout/leg issues at step two inherently affect the rest of the steps, because those impairments were not considered, individually or in combination with other impairments, at the subsequent steps. However, an additional problem

infected step three of the ALJ's analysis. The ALJ's entire step three analysis consisted of the following three sentences:

> As discussed below, the medical evidence does not contain the objective signs, symptoms or findings, or the degree of functional limitations, necessary for the claimant's impairments, considered singly or in combination, to meet or equal the severity of any sub-section of sections 1.04 or any other section contained in Appendix 1. In reaching this conclusion, the Administrative Law Judge has considered the opinions from the state agency medical consultants who evaluated the issue at the administrative review process and reached the same conclusion. (20 CFR 404.1527(f) and 416.927(f); SSR96-6p). The Administrative Law Judge also notes no treating or examining medical source has stated the claimant has an impairment or combination of impairments that meets or equals the criteria of any listed impairment. (Tr. at 18).

Although the ALJ made reference to "any subsection of sections 1.04 or any other section," his analysis did not provide sufficient information for this Court to find that substantial evidence supports his conclusion. There is evidence in the medical records of stenosis, pain, and motor weakness, which are some of the factors described in the subsections of listing 1.04. The ALJ did not provide any analysis to support his conclusion that none of the subsections were met. Instead, he cites the "opinions from the state medical consultants," which in fact do not address the listings at all. (Tr. 426-433, 383-390). This court is therefore unable to ascertain, on this record, whether the ALJ's findings are supported by substantial evidence.

**Conclusion**

Based on the foregoing, the Court DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion. A separate order follows.

Dated: October 21, 2011 _____/s/_____
Stephanie A. Gallagher
United States Magistrate Judge